1  **WO**

6  IN THE UNITED STATES DISTRICT COURT

7  FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Heather HIGBY, | ) | No. CV-03-0899-PHX-SMM |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OF DECISION &** |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| J. Travis NEWBY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court is Defendant Banner Health System's Motion for Summary Judgment [Doc. No. 95], in which Defendant Newby joins [Doc. No. 97]; Defendant Banner Health System's Motion to Strike Plaintiff's Statement of Facts in Support of Its Response to Banner's Motion for Summary Judgment [Doc. No. 110]; Defendant Banner Health System's Motion for Summary Ruling on Defendant's Motion to Strike Plaintiff's Statement of Facts in Support of Its Response to Banner's Motion for Summary Judgment [Doc. No. 112]; Plaintiff's Motion to Allow Late Filing of Plaintiff's Response to Banner's Motion to Strike Plaintiff's Statement of Facts in Support of Its Response to Banner's Motion for Summary Judgment [Doc. No. 114]; and Plaintiff's Motion for Order Placing Under Seal Certain Portions of Plaintiff's Response to Banner's Motion for Summary Judgment [Doc. No. 119]. After considering the arguments raised in the parties' briefs, the Court issues the following Memorandum of Decision and Order.

//

//

# I.  BACKGROUND

## A.  Factual Background

The following facts are undisputed, except where noted.

Plaintiff was employed by Defendant Banner Health System ("Banner") as a surgical technician from October 2001 to September 2003.  (Pl.'s Statement of Facts, ¶¶ 3, 4; Banner's Statement of Facts, ¶ 1; Ex. 15 to Banner's Statement of Facts.)  From the beginning of her employment with Banner until November 2002, Plaintiff worked with Defendant J. Travis Newby ("Newby").  (Pl.'s Statement of Facts, ¶¶ 2, 42; Banner's Statement of Facts, ¶¶ 13, 23.) Newby was also a surgical technician.   (Banner's Statement of Facts, ¶ 13.; Pl.'s Resp. to Banner's Statement of Facts, ¶ 13.)

Early on in Plaintiff's employment with Banner, Newby was Plaintiff's "preceptor." (Pl.'s Statement of Facts, ¶ 33, Banner's Statement of Facts, ¶ 16.)  Although Plaintiff admits that Newby did not review her, make decisions about her work schedule or pay, or have the power to hire or terminate anyone, Plaintiff contends that Newby supervised her "in a sense" as her preceptor.  (Pl. Depo. at 49:5-25.) While it is unclear from the Record precisely what a "preceptor" is, both parties concede that Newby was Plaintiff's preceptor for only two or three days.  (Id. at 49:10-11; Banner's Statement of Facts, ¶ 16.)

Plaintiff alleges that during those few days in which Newby was Plaintiff's preceptor, Newby, "among other sexual comments, told [her] he wanted to grab [her] breasts and put his face between them, shake his head back and forth[,] and then he made a noise." (Pl. Depo. at 39:7-11.)  Plaintiff contends that she reported that specific comment to Cindy Toliver.  (Id. at 39:16-17.)  It is unclear from the Record whether Toliver was Plaintiff or Defendant Newby's supervisor at the time.[1]  According to Plaintiff, Toliver responded to Plaintiff's complaint by

---

[1]Plaintiff describes Toliver as Defendant Newby's supervisor (Pl. Depo. at 124:8-10), but it is not apparent at what time Toliver became his supervisor.  Toliver may have been the charge nurse during the time in question (Id. at 45:11-17), but that is not explicitly stated in the Record, nor is any information as to the supervisory duties of a charge nurse.  In addition, Toliver conducted a Performance Assessment of Plaintiff as Plaintiff's supervisor, but that Assessment is dated October 18, 2002, approximately a year after the alleged sexual comments were made.

1   stating, "[T]hat's just Travis, and that's just how he is, and you will have to just deal with that,

2   and let me know if it happens again." (Pl. Depo. at 39: 18-24.) Newby denies ever making the

3   alleged statements. (Newby Depo. at 60:23-61:3.)

4          Plaintiff also alleges that in March 2002, Newby was sitting in a lounge at work and as

5   Plaintiff walked through the lounge, Newby "grabbed [Plaintiff] and pulled [her] down onto his

6   lap." (Pl. Depo. at 40:5-7.) Plaintiff claims that she stood up and threatened Newby with her

7   boyfriend. (Id. at 40:8-10.) Plaintiff did not report this incident because, according to Plaintiff,

8   Toliver told her that Newby did not get in trouble for his actions. (Id. at 41:11-19.)

9          The final incident at issue in this case occurred on November 27, 2002. Plaintiff alleges

10  that while she was in a hallway at work one morning, Newby approached Plaintiff from behind,

11  grabbed her under her breasts, and lifted her up. (Id. at 74:14-16.) While Newby lifted

12  Plaintiff, he allegedly rubbed his penis against her buttocks, swinging her back and forth and

13  grunting. (Id. at 74:16-18, 79:8-10.) Plaintiff claims she could not breathe and could not release

14  herself from Newby's grip during this incident, which Plaintiff contends lasted 40 seconds. (Id.

15  at 74:18-23.) Newby denies Plaintiff's allegations. Newby claims that he hugged Plaintiff

16  around her shoulders, from behind and to the side, and said "[H]i, how's it going." (Newby

17  Depo. at 64: 4-17.) Newby also alleges that the hug lasted only three to five seconds, and that

18  he hugged Plaintiff "out of exuberation of friendship." (Id. at 64:24 - 65:2, 69:10-18.) After

19  Newby released Plaintiff, either from a lift or a hug, Plaintiff cursed at Newby and told him that

20  he had injured her back. (Pl. Depo. at 76:17-20; Newby Depo. at 67:18 - 68:3.) A brief

21  discussion followed about both Plaintiff and Newby having recently had back surgery. (Pl.

22  Depo. at 77:7-20; Newby Depo. at 68:7-15.) Plaintiff was treated that day by Banner's

23  Occupational Health department, where she was diagnosed with an acute strain of her back.

24  (Ex. to Pl.'s Statement of Facts, p. HIG-1232.)

25         Within a half hour of the incident, Plaintiff reported it to first to Teresa Orlowski, then

26  to Katie Roy. (Pl. Depo. at 72:15-17, 100:14-22, 102:12 - 103:1; Banner's Statement of Facts,

27  _____

28  (Ex. to Pl.'s Statement of Facts at p. HIG-1076.)

¶¶ 20-22.)  Roy was a supervisor in the area.  (Banner's Statement of Facts, ¶ 21, Pl.'s Resp. to Banner's Statement of Facts, ¶ 21.)  While she met with Roy, Plaintiff wrote her version of the events that had transpired earlier that morning.  (Pl. Depo. at 117:11-12; Ex. 8 to Banner's Statement of Facts.)  Defendant Banner terminated Newby's employment later that day.[2]  (Ex. to Pl.'s Statement of Facts at p. HIG-1213; Banner's Statement of Facts, ¶ 23.)

That same day, Plaintiff reported the incident to the Mesa Police Department, and the officer found probable cause to charge Newby with assault "for recklessly causing injury to [Plaintiff]."  (Ex. to Pl.'s Statement of Facts, pp. 1218-1221A.)  Plaintiff also filed a workers' compensation claim for her injuries stemming from the incident with Newby.  (Banner's Statement of Facts, ¶ 29; Pl.'s Resp. to Banner's Statement of Facts, ¶ 29.)  In January 2003, Plaintiff filed an EEOC charge based on the November 27, 2002 incident.  (Ex. to Pl.'s Statement of Facts, pp. HIG-1223-29.)  After receiving a right-to-sue letter, Plaintiff filed this case in Maricopa County Superior Court in April 2003.[3]  Plaintiff continued to work for Banner after filing suit, but, according to Plaintiff, management was rude to her after she filed her Complaint and co-workers were no longer polite.  (Pl. Depo. at 110:25 - 111:1-11.)

On May 19, 2003, Plaintiff was disciplined for "verbalizing legal issues at work with staff, making them feel pressured and uncomfortable," which resulted in "upsetting staff and disrupting quality patient care."  (Ex. 12 to Banner's Statement of Facts.)  The May 19, 2003

---

[2]Evidence in the Record indicates that Newby had been disciplined for sexual harassment on August 23, 2002 in the form of a Final Written Warning.  (Ex. to Pl.'s Statement of Facts at pp. HIG-1098-1100, Ex. 9 to Banner's Statement of Facts.)  In the Warning, Newby was cautioned that "any further complaints/documentation re alleged sexual harassment within 12 mos. of this date, will result in termination of employment, which would be 8/23/03."  (Id.)  When Plaintiff complained of the incident on November 27, 2002, Banner followed through with its warning and terminated Newby.  The Court finds that while the previous incident may not be taken into account for purposes of establishing a hostile work environment for reasons stated in Section II.B of this Order, *infra*, Banner's Warning and prompt termination of Newby just hours after Plaintiff reported his conduct supports Banner's claim that it took sufficient action in this case.

[3]For the procedural posture of this case that followed, see Section I.B. of this Order, *infra*.

1  disciplinary report indicates that the issue had previously been discussed with Plaintiff.[4]  On

2  August 3, 2003, Plaintiff received her third disciplinary action for attendance problems.  (Ex.

3  11 to Banner's Statement of Facts.)  She had previously been disciplined on April 18, 2003 and

4  June 23, 2003 for similar conduct.[5]  (Id.)

5         During her deposition for this case, which occurred on September 24, 2003, Plaintiff

6  admitted that, a couple weeks prior, she had brought a digital tape recorder into an operating

7  room during a surgical procedure.  (Pl. Depo. at pp. 127:5 - 129:14.)  Plaintiff had done so

8  unbeknowst to anyone else, and she had not obtained patient consent.  (Id. at p. 129:5-7, 131:11-

9  13.)  The tape recorder was not sterile and was in Plaintiff's pocket.  (Id. at 129:1-4.)  Plaintiff's

10 intent was to record a doctor who was named as a potential witness by Defendants "to maybe

11 show intention and motivation for [the doctor] being a potential witness."  (Id. at 127:17-24,

12 131:2-8.)  Plaintiff did not record him, however, because she "didn't know how to turn it on

13 without looking at it." (Id. at 129:10-18.)  When asked about tape recording and patients' rights,

14 Plaintiff stated that her tape recording "did not concern the patient."  (Id. at 128:14-20.)  At the

15 time of her deposition, Plaintiff still worked for Banner.

16        Later that day, September 24, 2003, Plaintiff was suspended by Defendant Banner.  (Ex.

17 14 to Banner's Statement of Facts.)  On September 25, 2003, an Employee Status Change Notice

18 was completed by Toliver, Plaintiff's supervisor.  (Id.)  The Notice states "brought to our

19 attention that Heather had a tape recorder or recorded during a case," cites Plaintiff for

20 "unprofessional conduct," "violation of patient confidentiality," and "violation of personal

21 conduct."  (Id.)  On September 29, 2003, Plaintiff was terminated by Defendant Banner.  (Id.)

22 In the Notice of Discharge/Termination, Banner listed the following as pertinent information

23 and previous correction action taken: "Formal Coaching 4/4/03 for discussion of personal/legal

24 _____

25        [4]The previous discussion appears to taken place on April 4, 2003.  (Id.)

26        [5]Also, in September 2002, Plaintiff's supervisor issued a "Written Warning" to Plaintiff
27 regarding Plaintiff's failure to arrive to work on time.  (Ex. 16 to Banner's Statement of Facts.)
   However, this warning was not included in Plaintiff's Notice of Discharge/Termination.  (Ex.
28 14 to Banner's Statement of Facts.)

1   issues at work; Initial Reminder 4/18/03 for discussion of personal/legal issues at work;

2   Advanced Reminder 6/23/03 for frequent call ins/attendance issues; Advanced Reminder

3   8/03/03 for not following 2 hour call in policy for shift; Violation of patient confidentiality

4   (HIPPA) [sic]; Violation of Personal Conduct; Stated did not punch in Weds 9/24/03 - was

5   called in and here 20" (minutes) [illegible]." (Id.)

6   **B. Procedural Background**

7           Plaintiff filed a Complaint against Defendants in Maricopa County Superior Court on

8   April 10, 2003.  Defendant Banner removed the case to this Court on May 13, 2003. [Doc. No.

9   1] Plaintiff filed an Amended Complaint on January 30, 2004, alleging eight causes of action:

10  (1) Battery; (2) Title VII Sexual Harassment; (3) Failure to Follow Bylaws; (4) Breach of

11  Contract and Covenant of Good Faith; (5) Intentional Infliction of Emotional Distress; (6)

12  Negligence; (7) Violation of Statute; and (8) Retaliatory Discharge. [Doc. No. 41]

13          On July 8, 2005, Defendant Banner moved for Summary Judgment as to all eight counts

14  of Plaintiff's Complaint. [Doc. No. 95] Defendant Newby joined the Motion for Summary

15  Judgment on July 19, 2005. [Doc. No. 97] Plaintiff responded on August 16, 2005, and

16  Defendant Banner then replied and moved to strike some of Plaintiff's Statement of Facts in

17  support of Plaintiff's Response to the Motion for Summary Judgment. [Doc. Nos. 103, 109, 110]

18  Because Plaintiff was late in responding, Banner filed a Motion for Summary Ruling. [Doc. No.

19  112]  Plaintiff eventually responded to the Motion to Strike, filing at the same time a Motion

20  to Allow Late Filing of Plaintiff's Response to Banner's Motion to Strike Plaintiff's Statement

21  of Facts in Support of Its Response to Banner's Motion for Summary Judgment. [Doc. Nos. 113,

22  114] Banner replied to Plaintiff's Response. [Doc. No. 120] Plaintiff also filed a Motion to place

23  portions of Plaintiff's Statements of Facts under seal. [Doc. No 119]

24          The Court's exercise of jurisdiction over Counts II and VIII is proper under 28 U.S.C.

25  § 1331, because the matter in controversy arises under the laws of the United States.  The Court

26  has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Counts I, III, IV, V, VI, and VII,

27  which are state law claims, because they share a "common nucleus of operative fact" with the

28

1   federal claims.  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).  Venue is

2   proper under 28 U.S.C. § 1391(b).

3                          **II. MOTION TO STRIKE AND RELATED MOTIONS**

4          Before considering the Motion for Summary Judgment, the Court first turns to Banner's

5   Motion to Strike some of Plaintiff's Statement of Facts, Banner's Motion for Summary Ruling,

6   Plaintiff's Motion to Allow Late Filing of its Response to the Motion to Strike, and Plaintiff's

7   Motion to place some of its Statement of Facts under seal.

8   **A.  Motion for Summary Ruling and Motion to Allow Late Filing**

9          Banner filed its Motion to Strike on September 7, 2005.[6]  The allotted time for a response

10  having passed, Banner moved for summary ruling on October 27, 2005.  Plaintiff then

11  responded to the Motion to Strike on October 31, 2005, and filed with it a Motion to allow its

12  late filing.

13         Rule 7.2(i) of the Rules of Practice of the United States District Court for the District of

14  Arizona ("Local Rule 7.2(i)") states that failure to timely respond to a motion may be deemed

15  consent to the granting of the motion and that the Court may then dispose of the motion

16  summarily.  As no timely response to Banner's Motion was filed, the Court finds that granting

17  Defendants' Motions to Compel would be appropriate under Local Rule 7.2(i).  The Court

18  therefore recognizes that it could summarily grant Banner's Motion to Strike pursuant to Rule

19  Local Rule 7.2(i).  However, the Court declines to do so.  Instead, the Court will grant Plaintiff's

20  Motion to Allow Late Filing of its Response to the Motion to Strike and thus deny Banner's

21  Motion for Summary Ruling.[7]

22  _____

23         [6]The Court notes that Banner attached an exhibit to its Motion to Strike ("Exhibit 1") that

24  contains legal arguments not included in its Motion.  Together, the Motion and Exhibit 1 total
    24 pages, clearly over the page limit of 17 pages stated in Local Rule 7.2(e).  This appears to

25  be an effort on the part of defense counsel to avoid the page limit, and the Court reminds
    counsel to strictly observe Local Rule 7.2(e).  The Court declines Plaintiff's invitation to entirely

26  ignore Exhibit 1, however, given Plaintiff's own tardy response to the Motion to Strike.

27         [7]The Court will grant Plaintiff's Motion to Allow Late Filing, but also notes that

28  Plaintiff's stated reason for the late filing, "lack of administrative support,"does not constitute

**B.  Motion to Strike and Motion to Seal**

Banner moves to strike the facts numbered 9(i)-(xii), 10(i)-(v), 11, 13-18, 20-21, 24-30, 44-46-49-55 in Plaintiff's Statement of Facts in Support of its Response to Banner's Motion for Summary Judgment. However, because the Court takes none of the facts that are at issue in the Motion to Strike into its consideration of the Motion for Summary Judgment, the Court will deny the Motion to Strike.

Plaintiff submits for the Court's consideration numerous previous alleged episodes of sexual harassment by Defendant Newby of other co-workers at Banner. However, Plaintiff does not demonstrate or make clear that she knew of any of those episodes before she complained to management about Newby.[8] Prior incidents of which Plaintiff was unaware cannot contribute to a hostile work environment with respect to her. Brooks v. San Mateo, 229 F.3d 917, 924 (9th Cir. 2000). "Lack of adequate discipline might be a relevant consideration in assessing the employer's liability once a hostile work environment is shown to exist, but it seems to have no logical bearing on whether there is a hostile work environment in the first place." Id. at 925 n.5. Therefore, evidence proffered by Plaintiff regarding Newby's prior incidents will not be taken into account by the Court in establishing whether a hostile work environment exists, and thus whether Plaintiff was retaliated against for complaining of the hostile work environment. The Motion to Strike will consequently be denied as moot.

Also, for good cause appearing and pursuant to Local Rule 7.2(i), the Court will grant Plaintiff's Motion for Order Placing Under Seal Certain Portions of Plaintiff's Response to Banner's Motion for Summary Judgment.

//

//

---

excusable neglect.

[8]The vast majority of the incidents Plaintiff lists happened before Plaintiff was employed by Banner, and Plaintiff has shown no facts which demonstrate she was aware of the specific instances referenced.

### III.  MOTION FOR SUMMARY JUDGMENT

**A.  Standard of Review**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive law determines which facts are material.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.  The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."  Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."  Celotex, 477 U.S. at 323-24.  Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994).  The moving party need not disprove matters on which the opponent has the burden of proof at trial.  See Celotex, 477 U.S. at 323-24.  The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

**B.  Discussion**

The Court now considers each of Plaintiff's claims in turn.  Where appropriate, the Court will address Defendants separately, as liability on some claims differs between them.

//

**1. *Count I: Battery***

A battery is a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact.  See W. Page Keeton, Prosser & Keeton on Torts, § 9, at 39 (5th ed. 1984).

a. As against Defendant Newby

The Court finds that judgment as a matter of law on this claim is not appropriate, because a genuine issue of material fact exists as to whether Defendant Newby intended a harmful or offensive contact.  Thus, summary judgment is inappropriate at this time as to Defendant Newby.

b. As against Defendant Banner

An employer is liable for the conduct of its employee if "the employee was performing a service in furtherance of [the] employer's business" at the time the injury occurred.  Ohio Farmers Ins. Co. v. Norman, 594 P.2d 1026, 1028 (Ariz. App. 1979).  While the issue of whether an employee's tort is within the scope of employment is generally a question of fact, it is a question of law "if the undisputed facts indicate that the conduct was clearly outside of the scope of employment."  Smith v. Am. Express Travel Related Serv. Co., 876 P.2d 1166, 1171 (Ariz. App. 1994).

The Court finds that Newby's conduct, even when taken as Plaintiff alleges to constitute a battery, was outside the scope of his employment. Newby's actions were not expressly or impliedly authorized by Banner, nor could his conduct have been reasonably contemplated as being necessarily or probably incidental to his employment.  See id.  The facts demonstrate that Newby's "alleged tortious actions were committed solely to further his own personal interests." See id.  Therefore, because Newby's conduct was clearly outside the scope of his employment, Banner cannot be held liable for battery.  See id.  Summary judgment as to this claim will accordingly be granted in favor of Defendant Banner.

## 2.  *Counts II and VII: Sexual Harassment under Title VII and Violation of Statute [A.R.S. § 41-1461][9]*

As a preliminary matter, the Court notes that A.R.S. § 41-1461, the Arizona Civil Rights Act ("ACRA"), is "generally identical to Title VII, and therefore federal Title VII case law is persuasive in the interpretation of the Arizona Civil Rights Act." Bodett v. Coxcom, Inc., 366 F.3d 736, 742 (9th Cir. 2004) (internal quotation marks and punctuation omitted); see also Cisneros v. Sears, Roebuck & Co., 660 P.2d 1228, 1229 (Ariz. App. 1982) (inferring law surrounding Title VII to ACRA).  Therefore, the analysis that follows pertains to both of Plaintiff's sexual harassment counts, Count II (Title VII claim) and Count VII (ACRA claim).

Sexual harassment claims fall under two categories: *quid pro quo* and hostile work environment. Brooks, 229 F.3d at 923.  Plaintiff in this case alleges a hostile work environment. To prevail on this claim, Plaintiff must demonstrate that (1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) this conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. Little v. Windermere Relocation, Inc., 301 F.3d 958, 966 (9th Cir. 2002).

The parties' briefings address only whether the three incidents Plaintiff alleges constitute a hostile work environment[10]; they do not address whether Plaintiff was subjected to unwelcome conduct of a sexual nature.  In addition, summary judgment requires that the Court take the facts in the light most favorable to the nonmoving party, the Plaintiff.  Thus, the Court will consider the first two elements as conceded and proceed to the third element of whether the three incidents were "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." Id.

---

[9]In her Amended Complaint, Plaintiff also alleges that Newby violated numerous criminal statutes.  Because this is a civil action and the Court has no jurisdiction over such claims, the Court only addresses Plaintiff's claim that Defendants violated A.R.S. § 44-1461.

[10]Plaintiff refers to Newby's alleged prior incidents of sexual harassment as evidence of a hostile work environment; however, for reasons stated in Section II.B, *supra*, the Court will only consider the three incidents alleged to have occurred between Plaintiff and Newby.

To determine whether an environment is sufficiently hostile or abusive to violate Title VII, the Court must look "at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001) (internal quotation marks omitted). Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to a discriminatory change in the terms and conditions of employment. Id. at 271. In addition, "the work environment must both subjectively and objectively be perceived as abusive." Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995). Plaintiff has alleged such a subjective perception, so the Court will proceed to the objective prong of its inquiry. The objective standard to be applied is the perspective of a reasonable woman. Ellison v. Brady, 924 F.2d 872, 879-80 (9th Cir. 1991).

The Court finds that the first two alleged incidents, the off-color remark and Newby grabbing Plaintiff onto his lap, do not constitute a hostile environment under the standards set forth above. While in poor taste, they do not rise above an offhand comment and an isolated incident that is not "extremely serious" under controlling case law. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998); see also Brooks, 229 F.3d at 925-26. Thus, the Court will focus its inquiry on the third incident and look to whether it created a hostile or abusive environment severe enough to violate Title VII.

A single "incident" of harassment can support a claim for sexual harassment under Title VII, because "frequency" is but one of the factors the Court must consider. Little, 301 F.3d at 967. However, a single incident that is not severe and that was followed by immediate corrective action by the employer is not sufficient to support a finding of a hostile or abusive work environment. Brooks, 229 F.3d at 925-26; see also Little, 301 F.3d at 967. In Brooks, the Ninth Circuit held that no hostile work environment existed when a co-worker who fondled another co-worker's bare breast and also touched her stomach was terminated shortly thereafter. 229 F.3d at 925-26.

The Ninth Circuit noted, however, that the Plaintiff in <u>Brooks</u> "did not allege that she sought or required hospitalization; indeed she did not suffer any physical injuries at all." <u>Id.</u> at 926. The Court considers this distinction significant, as it goes to the severity of the incident. In this case, looking at the facts in the light most favorable to Plaintiff, Newby lifted her in the air for 40 seconds, rubbed his penis against her buttocks while making a grunting noise, and caused injury to her back. Because physical injury resulted from the alleged harassment, the Court finds that the incident was more severe than that in <u>Brooks</u>. Thus, even though the facts present a close question, the Court finds that, for summary judgment purposes, sufficient evidence exists to support Plaintiff's claim that she suffered a hostile work environment.

For Banner to be held liable for Newby's harassment, however, it must have failed to take remedial measures after it knew or should have known about the harassment. <u>See</u> <u>Mockler v. Multnomah County</u>, 140 F.3d 808, 812 (9th Cir. 1998). Remedial measures taken by an employer should be "reasonably calculated to end the harassment," and the Court may also consider "the remedy's ability to persuade potential harassers to refrain from unlawful conduct. <u>Ellison</u>, 924 F.2d at 882. In this case, Banner terminated Newby's employment the same day of the lifting incident. The Court therefore finds that Banner cannot be held liable for Newby's conduct towards Plaintiff, because Banner took nearly immediate action that ended the harassment and likely persuaded potential harassers to refrain from such conduct. <u>See</u> <u>id.</u> Summary judgment as to Counts II and VII are therefore appropriate in favor of Banner.

### 3. *Count III: Failure to Follow Bylaws*

Plaintiff alleges that Defendant Banner failed to follow its own policies and bylaws and therefore should be held liable.[11] In Plaintiff's Response to the Motion for Summary Judgment, Plaintiff contends that Banner's employee handbook and policies regarding a "zero tolerance" approach to sexual harassment created an implied-in-fact contract term that it "violated." (Pl.'s

---

[11]Even though Plaintiff has failed to cite any legal authority creating a cause of action for "Failure to Follow Bylaws" or point to the "bylaws" that were not followed (it appears only a sexual harassment policy is at issue), the Court will proceed in its analysis using the case Plaintiff cites as support for this claim and its progeny.

1   Resp. to M. for Summ. J. at p. 16.)  In support of that argument, Plaintiff cites <u>Wagenseller v.</u>

2   <u>Scottsdale Memorial Hosp.</u>, 710 P.2d 1025 (Ariz. 1985) (superseded in other respects by A.R.S.

3   § 23-1501).  While it is true, post-<u>Wagenseller</u>, that an implied-in-fact term can become part of

4   a contract, the Court finds that the Arizona Supreme Court's later opinion in this area of law,

5   found in <u>Demasse v. ITT Corp.</u>, 984 P.2d 1138 (Ariz. 1999) controls in this case.

6          In <u>Demasse</u>, the Arizona Supreme Court noted that a statement in an employee handbook

7   "is contractual only if it discloses a promissory intent or is one that the employee could

8   reasonably conclude constituted a commitment by the employer.  If the statement is merely a

9   description of the employer's present policies . . . it is neither a promise nor a statement that

10  could reasonably be relied upon as a commitment."  <u>Id.</u> at 1143 (internal quotation marks

11  omitted).  After reviewing the sexual harassment policy included in the employee handbook

12  distributed to Plaintiff by Defendant Banner, the Court finds that the policy statement did not

13  constitute a commitment by Banner because it included no language indicating promissory

14  intent.  Thus, the judgment as a matter of law in favor of Defendant Banner is appropriate as to

15  this claim.

16         **4.  *Count IV:  Breach of Contract and Covenant of Good Faith***

17         Plaintiff also claims that Defendant Banner breached the duty of good faith that is

18  implicit in her employment contract by denying her right to the benefits of her employment

19  contract and "by unfair conduct that evidenced bad faith toward the Plaintiff and jeopardized

20  not only her job, but her health and safety."  (Pl.'s Resp. to M. for Summ. J. at p. 16., Compl.,

21  ¶ 31.)  Plaintiff also argues that Banner terminated Plaintiff for "bad cause."  (Pl.'s Resp. to M.

22  for Summ. J. at p. 17.)

23         Exactly what Plaintiff is claiming in this Count, however, is unclear to the Court.

24  Plaintiff calls this Count "Breach of Contract and Covenant of Good Faith," but Plaintiff's

25  pleadings then allege that Banner acted in "bad faith."  By claiming that Banner "evidenced bad

26  faith toward" her, Plaintiff seems to be claiming tortious breach of the covenant of good faith

27  and fair dealing.  The Court will deny such a claim, because the Arizona Supreme Court has

28  "explicitly refused to extend the bad faith recovery available in actions on insurance contracts

1   to the employment contract context." <u>Nelson v. Phoenix Resort Corp.</u>, 888 P.2d 1375, 1385-86
2   (Ariz. App. 1994).

3    Even assuming Plaintiff's claim is strictly contract-based, it is not clear exactly what
4   conduct Plaintiff claims constituted the breach of the covenant of good faith in fair dealing. As
5   stated above, Plaintiff's Amended Complaint, which was filed *after* her termination from
6   employment with Banner, alleges that Banner breached the implied covenant "by unfair conduct
7   that evidenced bad faith toward the Plaintiff and jeopardized not only her job, but her health and
8   safety." (Compl., ¶ 31.) Plaintiff makes no allegation in her Amended Complaint that her
9   *termination* breached an implied covenant of good faith and fair dealing. However, in her
10  Response to the Motion for Summary Judgment, Plaintiff argues that this claim arose because
11  she was terminated for "bad cause."

12   In Arizona, an at-will employee such as Plaintiff can be terminated for no cause or for
13  good cause. <u>Wagenseller</u>, 710 P.2d at 1031. Arizona recognizes one tort exception to the
14  general rule that employment is at-will: firing for bad cause. <u>Mack v. McDonnell Douglas</u>
15  <u>Helicopter Co.</u>, 880 P.2d 1173, 1175 (Ariz. App. 1994). A "bad cause" termination is one
16  which is against public policy articulated by constitutional, statutory, or decisional law. <u>Id.</u>,
17  <u>Wagenseller</u>, 710 P.2d at 1036. In this case, for reasons stated in Section II.B.7, *infra*, the Court
18  finds that Plaintiff was not fired for bad cause in violation of <u>Wagenseller</u>. Thus, Plaintiff's
19  claim for breach of contract and covenant of good faith fails as a matter of law.

20   **5. *Count V: Intentional Infliction of Emotional Distress***

21   To establish a claim in intentional infliction of emotional distress under Arizona law,
22  Plaintiff must prove three elements. First, the defendant's conduct must be capable of being
23  characterized as "extreme and outrageous." <u>Watts v. Golden Age Nursing Home</u>, 619 P.2d
24  1032, 1035 (Ariz. 1980) (citing Restatement (Second) of Torts § 46). With regard this first
25  element, "liability has only been found where the conduct has been so outrageous in character,
26  so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as so
27  atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which
28  the recitation of the facts to an average member of the community would arouse his resentment

1   against the actor, and lead him to exclaim, 'Outrageous!'" Id. (citing comment d to § 46 of

2   Restatement (Second) of Torts). Thus, the conduct necessary to sustain an intentional infliction

3   of emotional distress "falls at the very extreme edge of the spectrum of possible conduct." Id.

4   When reasonable minds could differ as to whether conduct is sufficiently extreme or

5   outrageous, the issue goes to the jury. Mintz v. Bell Atlantic Sys. Leasing, 905 P.2d 559, 562

6   (Ariz. App. 1995).

7          In addition to the first element, Plaintiff must show that the defendant must either intend

8   to cause emotional distress or recklessly disregard the near certainty that such distress will result

9   from his conduct and that Plaintiff suffered severe emotional distress as a result of defendant's

10  conduct. Watts, 619 P.2d at 1035 (citing Restatement (Second) of Torts § 46).

11                        a. As against Defendant Newby

12         Plaintiff bases her claim for intentional infliction of emotional distress on the three

13  instances of alleged sexual harassment: Newby's alleged sexual comment, Newby's alleged

14  pulling Plaintiff onto his lap, and Newby's alleged lifting of Plaintiff in the air and rubbing her

15  against him in a sexual manner.

16         The Court finds that reasonable minds could differ on whether Newby's above conduct,

17  when taken as alleged by Plaintiff, constituted "extreme and outrageous" conduct. Thus, the

18  Court finds the first element of this claim could go to the jury. Also, with regard to the second

19  element, the Court finds that a genuine issue of material fact exists as to whether Newby

20  intended to cause Plaintiff emotional distress or recklessly disregarded the near certainty that

21  such distress would result.

22         However, as to the third element, the Court does not find that Plaintiff suffered from

23  "severe" emotional distress as Arizona law requires. See Watts, 619 P.2d at 1035. Plaintiff

24  alleges in her Amended Complaint that she "suffered pain, fright, anguish, anxiety, humiliation,

25  revulsion and distress some or all of which may be of a permanent nature," and she also alleges

26  that she "has incurred and may in the future incur medical expenses." (Compl. at ¶ 37.)

27  However, Plaintiff has not expanded on these statements since, nor has she supported her

28  allegations with any evidence. According to Rule 56 of the Federal Rules of Civil Procedure

1    and case law applying Rule 56, Plaintiff must come forward with supporting facts or evidence

2    at the summary judgment stage. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586-87.  Plaintiff

3    has introduced no such evidence.  The Court is unable to find that Plaintiff's statements in her

4    Amended Complaint rise to the level of "severe" emotional distress.  Because Plaintiff has failed

5    to make a showing sufficient to establish this essential element of her claim for intentional

6    infliction of emotional distress, judgment as a matter of law in favor of Defendant Newby is

7    appropriate.  See Celotex, 477 U.S. at 322.

8                        b.  As against Defendant Banner

9          Plaintiff also claims that Defendant Banner is directly and independently liable for

10   intentional infliction of emotional distress.[12]  In support of this assertion, Plaintiff points to Ford

11   v. Revlon, 734 P.2d 580 (Ariz. 1987) (en banc), in which the Arizona Supreme Court held an

12   employer liable for intentional infliction of emotional distress based on its failure to take

13   appropriate action in response to an employee's complaint of sexual harassment.

14         The Court, however, finds the facts in this case clearly distinguishable from those in

15   Ford.  Most significantly, the plaintiff in Ford reported her supervisor's sexual harassment to

16   management for nearly a year before action was taken against her supervisor.  Id. at 582-83.

17   In the case at bar, Banner terminated Newby the same day that the lifting incident occurred.

18   Additionally, the Court finds that even if Plaintiff reported the sexual comment incident to her

19   supervisor in 2001 and no action was taken, that alleged conduct by Banner did not rise to the

20   level of intentional tortious conduct.  In addition, as discussed above, Plaintiff has not shown

21   that she suffered "severe" emotional distress, which is an essential element of her claim.  Thus,

22   Plaintiff's claim for intentional infliction of emotional distress against Banner must fail as a

23   matter of law.

24   //

25   //

26

27         [12]While it does not appear that Plaintiff alleges vicarious liability on the part of
     Defendant Banner for Newby's conduct, the Court notes that this theory of recovery would fail
28   due to the lack of derivative liability on the part of Newby.

### 6. *Count VI: Negligence*

Next, Plaintiff alleges that Banner breached its duty to "deal fairly" with her, and therefore should be held liable. (Compl., ¶ 40-41.) Plaintiff does not expand on this claim in subsequent pleadings, and Plaintiff's Response to Banner's Motion for Summary Judgment is incomplete. Plaintiff alleges in her Complaint that Banner had a duty and breached that duty, but then states that "because of the negligent acts of Banner and Newby," Plaintiff suffered damages. Thus, it is not clear to the Court exactly against which parties Plaintiff is claiming negligence.[13] Nor is it apparent on what grounds Plaintiff brings this claim. Indeed, Plaintiff alleges that Banner had a duty to "deal fairly" with her, yet does not allege facts that demonstrate a breach of that duty. Plaintiff also cites no legal authority for such a duty. If Plaintiff is citing an implied covenant of good faith and fair dealing, the Court refers Plaintiff to its discussion of same in Section II.B.4, *supra*. The Court notes that negligent supervision is not a theory on which Plaintiff relies, because Plaintiff so stated in her Response to the Motion for Summary Judgment. (Pl.'s Resp. to M. for Summ. J. at p. 17.)

It is not the duty of the court to develop Plaintiff's arguments for her, find the legal authority to support those arguments, or guess at what part of the Record may be relevant. See In re Morrissey, 349 F.3d 1187, 1189 (9th Cir. 2003). Therefore, because Plaintiff has failed to allege specific facts that show the essential elements of a claim for negligence and clarify the legal theory on which she seeks recovery (and as to which Defendant), the Court is compelled to grant Defendants' Motion for Summary Judgment on Count VI as to both Defendants.[14]

//

---

[13]Plaintiff mentions in Count VII of her Complaint, which is entitled "Violation of Statute" and deals with the Arizona Civil Rights Act, that Newby's actions were "willful and negligent per se." However, Plaintiff makes no supporting argument in any pleading (or in the "negligence" count of her Complaint, wherein she does not mention negligence per se), and the Court has no duty to flesh out Plaintiff's arguments for her.

[14]Although it is unclear whether Plaintiff brings this Count against Newby as well as Banner, the Court reaches its conclusion that Plaintiff has failed to assert a claim supported by facts and law with respect to both Defendants for the reasons stated immediately above.

**7. *Count VIII: Retaliatory Discharge***

Plaintiff alleges that she was terminated in retaliation for complaining about the hostile work environment and for filing an EEOC charge of sexual harassment against Banner, in violation of Title VII and ACRA. (Compl. ¶ 51.) Because Title VII and ACRA are "generally identical," federal courts' construction of Title VII claims is "persuasive in construing Arizona's civil rights statute." Dawson v. Maricopa County Super. Ct., 786 P.2d 1074, 1076 (Ariz. App. 1990), see also Bodett, 366 F.3d at 742. Thus, the Court's analysis below simultaneously addresses Title VII and ACRA in Plaintiff's retaliation claim.

To establish a retaliation claim, Plaintiff must show that (1) she was involved in a protected activity, (2) an adverse employment action was taken against her, and (3) a causal link between the two exists. Payne v. Norwest Corp., 113 F.3d 1079, 1080 (9th Cir. 1997). After Plaintiff has made that *prima facie* case, the burden shifts to the employer to furnish legitimate reasons for the adverse employment action. Once the employer has met that burden, Plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. See id. If Plaintiff can make that showing, her retaliation claim survives summary judgment. Brooks, 229 F.3d at 928.

First, the Court considers whether Plaintiff has made a *prima facie* case of retaliation. Plaintiff reported the alleged sexual harassment activity to Banner and to the EEOC. Because asserting one's civil rights in such a manner is a protected activity under Title VII, the first element of the *prima facie* case is met. See id. Next, Plaintiff's employment was terminated by Banner. Termination certainly constitutes an adverse employment action. Little, 301 F.3d at 969. The Court therefore proceeds to the third and final element of the retaliation claim, which requires a causal link between the protected activity and the adverse employment action. The Court finds that Plaintiff has not shown a causal link between her complaining about the alleged harassment and filing an EEOC charge and her termination. Plaintiff complained about the lifting incident in November 2002, and she filed her EEOC claim in January 2003. She was discharged by Banner in September 2003. This distance in time is notable.

1    Moreover, in that interim period of time, Plaintiff was disciplined and ultimately

2    terminated for actions that were not related to her having complained of harassment.  Plaintiff

3    was terminated for violating HIPAA by secretly bringing a tape recorder into a surgical

4    procedure in an effort to obtain evidence for this case.  In its Notice of Discharge/Termination,

5    Banner also cited Plaintiff's previous disciplinary issues of speaking with co-workers about this

6    case and Plaintiff's attendance problems.  Plaintiff does not dispute that she was absent or tardy

7    on the stated dates, or that she discussed her legal case with co-workers, or that she secretly

8    brought a tape recorder into an operating room.  The Court finds that those intervening events,

9    which occurred between Plaintiff's complaining of alleged harassment and filing an EEOC

10   charge and her subsequent termination, defeat any alleged causal link.  Therefore, the Court

11   finds that Plaintiff has failed to establish the third prong, and her retaliation claim consequently

12   fails as a matter of law.

13   Even if Plaintiff were to demonstrate a *prima facie* case for retaliation, the Court notes

14   that Banner has proffered legitimate, non-discriminatory reasons for its decision to terminate

15   Plaintiff's employment, and that Plaintiff has not shown pretext either directly, by showing that

16   discrimination more likely motivated the employer, or indirectly, by showing that the

17   employer's explanation is unworthy of credence.  See Chuang v. Univ. of Cal. Davis, 225 F.3d

18   1115, 1127 (9th Cir. 2000).  Furthermore, even assuming Plaintiff had established a *prima facie*

19   case of retaliation, the Court finds that Plaintiff has failed to produce any evidence to counter

20   the stated legitimate reasons for her termination.

21   Accordingly, the Court will grant summary judgment as to Plaintiff's retaliation claim

22   in favor of Defendant Banner.

23                                          **CONCLUSION**

24   In addition to advancing recognized claims for relief, Plaintiff seeks to invent new claims

25   which are unsupported by the facts or law.  Plaintiff also alleges a claim without articulating a

26   legal basis for same or clarifying against whom she is bringing the cause of action.

27   For the reasons set forth above in this Memorandum of Decision, summary judgment is

28   granted in favor of Defendant Banner Health System as to all Counts of Plaintiff's Complaint,

1   and is granted in favor of Defendant Newby as to Counts V and VI (the only claims brought

2   against Defendant Newby were Counts I, V, and VI[15]).  The remaining claim in this case is

3   Count I, Battery, against Defendant Newby.  Because the federal claims of this case have been

4   dismissed, the Court declines to exercise supplemental jurisdiction over Count I, a state law

5   claim.  That Count will be remanded to state court.

6          Accordingly, for the reasons set forth above,

7          **IT IS ORDERED** that Defendant Banner Health System's Motion for Summary

8   Judgment [Doc. No. 95] is GRANTED IN PART and DENIED IN PART, as provided herein.

9   Plaintiff's claims against Defendant Banner Health System are DISMISSED, thereby

10  terminating Banner Health as a party to this action.  Plaintiff's claims against Defendant Newby,

11  with the exception of Count I, are DISMISSED.  The Clerk of Court is ordered to remand Count

12  I of the Complaint, as to Defendant Newby only, to Maricopa County Superior Court.

13         **IT IS FURTHER ORDERED** that Defendant Banner Health System's Motion to Strike

14  Plaintiff's Statement of Facts in Support of Its Response to Banner's Motion for Summary

15  Judgment [Doc. No. 110] is DENIED.

16         **IT IS FURTHER ORDERED** that Defendant Banner Health System's Motion for

17  Summary Ruling on Defendant's Motion to Strike Plaintiff's Statement of Facts in Support of

18  Its Response to Banner's Motion for Summary Judgment [Doc. No. 112] is DENIED.

19         **IT IS FURTHER ORDERED** that Plaintiff's Motion to Allow Late Filing of Plaintiff's

20  Response to Banner's Motion to Strike Plaintiff's Statement of Facts in Support of Its Response

21  to Banner's Motion for Summary Judgment [Doc. No. 114] is GRANTED.

22         **IT IS FURTHER ORDERED** that Plaintiff's Motion for Order Placing Under Seal

23  Certain Portions of Plaintiff's Response to Banner's Motion for Summary Judgment [Doc. No.

24  119] is GRANTED.

25

26

27         [15]As indicated in Section III.B.6, *supra*, the Court assumes for purposes of this Motion

28  that Plaintiff brought Count VI against Newby, even though that is unclear from the filings.

1    **IT IS FURTHER ORDERED** that the Clerk of Court shall seal Paragraphs 26 and 27

2    of Plaintiff's Statement of Facts in Support of Plaintiff's Response to Banner's Motion for

3    Summary Judgment [Doc. No. 104], as well as pages 10 through 13 of the Shannon Drews

4    deposition included in the exhibits to Plaintiff's Statement of Facts in Support of Plaintiff's

5    Response to Banner's Motion for Summary Judgment [Doc. No. 104].

6    **IT IS FURTHER ORDERED** that the Clerk of the Court enter judgment accordingly.

7    DATED this 8th day of February, 2006.

Stephen M. McNamee
Chief United States District Judge